1   Janet M. Herold
    Regional Solicitor
2   Daniel J. Chasek
    Associate Regional Solicitor
3   **NANCY E. STEFFAN**, Trial Attorney (CSBN 280958)
    Office of the Solicitor
4   U.S. Department of Labor
    350 S. Figueroa St., Suite 370
5   Los Angeles, California 90071
    Direct: (213) 894-5366
6   Facsimile: (213) 894-2064
    Email: Steffan.Nancy.E@dol.gov

FILED
CLERK, U.S. DISTRICT COURT

DEC 16 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11  **THOMAS E. PEREZ**, Secretary of      ) Civil Action
        Labor, United States Department of  )
12      Labor,                              ) Filed No. **CV 13-09228** — GAF
                                            )              (JEMx)
13              Plaintiff,                  )
                                            ) **MEMORANDUM OF POINTS AND**
14          v.                              ) **AUTHORITIES IN SUPPORT OF**
                                            ) **APPLICATION FOR A**
15  **ALKANAN, INC. d/b/a Recycling**       ) **TEMPORARY RESTRAINING**
        **Innovation d/b/a Valley Recycling,** ) **ORDER AND ORDER TO SHOW**
16      a corporation;                      ) **CAUSE WHY A PRELIMINARY**
    **KARIM AMERI**, an individual;         ) **INJUNCTION SHOULD NOT**
17                                          ) **ISSUE**
                Defendants.                 )
18                                          )
                                            )
19                                          )
                                            )
20

21          Plaintiff Thomas E. Perez, Secretary of Labor, U.S. Department of Labor

22  ("Secretary"), submits this memorandum of law in support of his application for a

23  temporary restraining order and order to show cause why a preliminary injunction

24

25  should not issue enjoining Defendants Alkanan, Inc. d/b/a Recycling Innovation

26  d/b/a Valley Recycling ("Alkanan") and Karim Ameri's unlawful interference,

27

28  threats, and intimidation of workers in violation of the investigative and anti-

retaliation provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA").

The Department of Labor's Wage and Hour Division (Wage and Hour) initiated an investigation of Defendants' pay practices on October 28, 2013.  Since Defendant Ameri learned of the Secretary's investigation, he has not only instructed employees not to provide truthful information to the Secretary but has actually threatened termination, deportation, and even bodily harm to those employees who cooperate with the Secretary's investigation.  Such threats plainly constitute unlawful interference with the Secretary's investigation and unlawful retaliation against employees under sections 11(a) and 15(a)(3) of the FLSA, 29 U.S.C. §§ 211(a) and 215(a)(3).  The Secretary respectfully requests that Defendant Ameri be enjoined from threatening, intimidating, retaliating against, and/or harming his employees because of the employees' communications and/or cooperation with the Secretary's pending investigation.

This request is urgent.  The Secretary's investigation and future enforcement efforts are threatened with irreparable harm absent immediate action to enjoin Defendant Ameri's unlawful interference, threats, and intimidation.  Such threats hinder and obstruct witness participation in this investigation, and could deter other workers from exercising their right to communicate with the government for fear of retaliation.  Defendant Ameri must be prevented from continuing such unlawful

conduct lest his threats be carried out and employees either lose their livelihoods or are physically harmed.

An injunction is necessary to protect the public interest in enforcement of federal labor laws. The FLSA protects employees from violations of its minimum wage and overtime provisions and protects law-abiding employers from unfair competition from employers who fail to comply with the Act's requirements. 29 U.S.C. §§ 206, 207, 202(a). These important public interests are served by ensuring that the Secretary of Labor's investigations, including all communications by employees to the Secretary, are free from witness intimidation.

There can be no doubt here that the balance of interests tips sharply in favor of the Secretary. Allowing Defendants to continue flouting the FLSA's protections by threatening employees who are perceived to be cooperating with the Secretary will deter the Defendants' employees from communicating with the Secretary and thereby irreparably harm the Secretary's investigation and future enforcement efforts. If Defendants are not enjoined and their threats are carried out, employees will suffer irreparable harm of termination or bodily harm at the hands of Defendants. By contrast, if the Court grants the requested relief to the Secretary, the Defendants would bear only the minimal burden of ceasing their interference with the Secretary's investigation. 29 U.S.C. §§ 211(a) and 215(c)(3).

## I. BACKGROUND

Alkanan, Inc. owns and operates at least six recycling facilities in the San Fernando Valley area under the business names Recycling Innovation and Valley Recycling. See Declaration of Wage and Hour District Director Kimchi Bui, attached as Exhibit A ("Bui Decl.), ¶ 4. These facilities purchase recyclable products from the public and resell them to factories that recycle the goods. Id. Defendant Ameri is the co-owner of Alkanan. Id. at ¶ 5. Defendant Ameri oversees the day-to-day operations of Alkanan's recycling facilities and hires, fires, and supervises employees; sets employees' schedules; and determines and pays employees' salaries. Id. The Wage and Hour Division initiated an investigation into Defendants' pay practices in late October of 2013. Id. at ¶ 2.

Almost immediately after the investigation began, Alkanan employees reported to Wage and Hour that Defendant Ameri had instructed them to provide false information to the Department of Labor. See Declaration of Wage and Hour Technician Carolina Ferniza (Ferniza Decl., attached as Exhibit B ("Ferniza Decl."), ¶ 7. Specifically, employees told Wage and Hour that Defendant Ameri told them that if they are contacted by the Department of Labor, they should state that they work only part time, that they are paid the minimum wage, that they are paid by the hour, and that they have been working for Defendant Ameri for only three months. Id. Employees stated that Defendant Ameri instructed them to make

these statements even though they are not true; based on the limited information Wage and Hour has gathered in its investigation to date, workers have worked in excess of 60 hours per week and have been paid a flat rate regardless of the number of hours worked. Id; Bui Dec. ¶ 6. All of the workers have been employed by Alkanan for more than three months and many of them have been working for Defendants for several years or more. Ferniza Decl. ¶ 7. Some employees reported that Defendant Ameri required them to write and sign letters stating false information about their working conditions and length of employment. Id. at ¶ 8. Employees were not given copies of these letters. Id.

Gathering truthful information from employees is particularly important in this investigation because Defendants do not maintain any records of hours worked by their employees. See Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1333 (2011); Bui Decl. ¶ 6. Instead, Defendant Ameri informed Wage and Hour that employees are paid a flat rate of $65-70 per day for shifts that last up to ten hours, up to six days per week. Bui Decl. ¶ 6. Moreover, Defendants did not maintain payroll records of any kind prior to March of 2013. Id.

In early December, Wage and Hour learned that Defendant Ameri has been repeatedly questioning employees in an effort to find out which employees have complained or spoken to Wage and Hour, and has threatened retaliation against any employee who has. Ferniza Decl. ¶¶ 9-10. Employees have reported that De-

fendant Ameri frequently asks them, in one-on-one conversations, whether they have spoken to the Department of Labor and whether they know which of their coworkers have spoken to the Department of Labor. Id. ¶ 9. Employees stated that Defendant Ameri continues to ask these questions, in some cases on a daily basis, even after they tell him that they have not spoken to the Department of Labor and they do not know who has. Id. Workers have told Wage and Hour that they feel threatened and harassed by this repeated questioning and fearful that Defendant Ameri will find out that they have spoken to the Department of Labor. Id.

Of greatest concern, employees have told Wage and Hour that Defendant Ameri has stated that once he finds out who is cooperating with the investigation, he will retaliate. Ferniza Decl. ¶ 10. Workers have reported that Defendant Ameri has told them on various occasions that if he finds out who has complained to the Department of Labor that he will that he will fire that person, that the person will be reported to immigration, that he will "make [that person's] life bad," and that he will "break [the person's] teeth." Id.

In addition to threats and intimidation reported by workers, Defendant Ameri's accountant also told the District Director of Wage and Hour's Los Angeles office that Mr. Ameri was very upset that his employees had been complaining about his wage practices. Bui Decl. ¶ 7. He was particularly upset that workers were posting wage complaints on Facebook and asked the District Director what

he could do to make the employees stop their complaints. Id. Defendant Ameri's accountant further told the District Director of Wage and Hour's Los Angeles office that Mr. Ameri had made a threat to break an employee's arm, but that he did not intend this as a "serious" threat of physical violence.[1] Id. at ¶ 8.

As a result of these threats, the Alkanan employees, who are all immigrants, have told Wage and Hour that they are very fearful that Defendant Ameri will find out that they have spoken to the government. Ferniza Decl. ¶ 11. Employees repeatedly ask Wage and Hour whether their names will be reported to Mr. Ameri if they speak with investigators. Id. Employees have told Wage and Hour that they believe that if Defendant Ameri finds out they have spoken to the Secretary that they will be fired and deported. Id. One employee told Wage and Hour that he believed Defendant Ameri would want to kill him if he found out that he met with an investigator. Id. Moreover, Defendant Ameri's threats have limited Wage and Hour's ability to investigate Defendant's pay practices. Id. at ¶ 12. To date, a number of employees have refused to speak with Wage and Hour regarding their working conditions. Id.

---

[1] Defendant's accountant told Wage and Hour that he believed employees had misinterpreted a comment about breaking someone's arm as a threat, but explained that in his native language, such comments are not serious threats. Defendant Amari speaks to workers in English and Spanish, neither of which is his native language.

## II.  LEGAL ARGUMENT

### A. Jurisdiction

Jurisdiction of this action is conferred upon the Court by Section 17 of the FLSA, 29 U.S.C. § 217 (injunction proceedings), and by 28 U.S.C. § 1345 (proceeding commenced by the United States).

### B. A Temporary Restraining Order Should Be Issued Restraining Defendants From Further Interference and Retaliation

The TRO sought by the Secretary is an extraordinary request forced by Defendants' repeated interference with the Secretary's investigation and serious and alarming threats of retaliation – including deportation and bodily harm – against employees who are believed to have spoken with DOL investigators.

A party seeking a TRO under Federal Rule of Civil Procedure 65 "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (discussing standard for preliminary injunction); Frontline Medical Associates, Inc. v. Coventry Healthcare Workers Compensation, Inc., 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009) (requirements for issuing TRO are identical to those for preliminary injunction); L.A. Unified Sch. Dist. v. U.S. Dist. Ct., 650 F.2d 1004, 1008 (9th Cir. 1981) ("if the district court's

order meets the exacting requirements of a preliminary injunction, it follows a fortiori that it is acceptable as a TRO").  Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the <u>Winter</u> test are met."  <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1132 (9th Cir. 2011).  A "serious question" is one on which the movant "has a fair chance of success on the merits."  <u>Sierra On-Line, Inc. v. Phoenix Software, Inc.</u>, 739 F.2d 1415, 1421 (9th Cir. 1984).

A moving party need not satisfy the standard requirements for equitable relief when an injunction is sought to prevent the violation of a federal statute, and the statute specifically provides for injunctive relief.  <u>Trailer Train Co. v. State Bd. Of Equalization</u>, 697 F.2d 860, 869 (9th Cir. 1983); <u>Marxe v. Jackson</u>, 833 F.2d 1121, 1128 n.3 (3d Cir. 1987).  Here, Sections 11 and 17 of the FLSA explicitly provide for injunctive relief in order to restrain violations of, <u>inter alia</u>, the investigatory and anti-retaliation provision of the FLSA.  <u>See</u> 29 U.S.C. §§ 211 and 217.  Therefore, the Secretary need not show that there is a possibility of irreparable harm before a court may issue an injunction.  Instead, the Secretary need only show that the defendant is engaged in, or about to be engaged in, the act or practices prohibited by the statute.  <u>See</u> <u>Atchison, T. and S. F. Ry. Co. v. Lennen</u>, 640 F.2d 255, 259 (10th Cir. 1981).  However, to reinforce the gravity of the Defend-

ants' conduct, the Secretary has taken the additional step of showing that the injunction is necessary to prevent irreparable harm.

**1. The Secretary is Likely to Succeed on the Merits of his Claims**

    a. <u>The Secretary is Likely to Prevail on his Retaliation Claim</u>

The anti-retaliation provision is a critical element in the enforcement scheme of the FLSA. <u>See</u> <u>e.g.</u>, <u>Mitchell v. Robert DeMario Jewelry, Inc.</u>, 361 U.S. 288, 292 (1960). Under the provision, found at Section 15(a)(3) of the FLSA, it is:

> unlawful for any person…to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA], or has testified or is about to testify in any such proceeding…

29 U.S.C. § 215(a)(3). "The FLSA's anti-retaliation clause is designed to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act." <u>Lambert v. Ackerly</u>, 180 F.3d 997, 1004 (9th Cir. 1999). "Unchecked retaliation, no matter what form, subverts the purpose of the FLSA." <u>Mullins v. City of New York</u>, 626 F.3d 47, 55 (2d Cir. 2010); <u>see also</u> <u>Centeno-Burney v. Perry</u>, 302 F. Supp. 2d 128, 135 (W.D.N.Y. 2003).

As explained by the Supreme Court, Congress intended the anti-retaliation provision to provide an incentive for workers to report wage and hour violations:

> For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through continuing

detailed federal supervision or inspection of payrolls.  Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied.  Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances.  This end the prohibition of 15(a)(3) against discharges and other discriminatory practices was designed to serve.  For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions.

Robert DeMario Jewelry, 361 U.S. at 292; see also Kasten, 131 S. Ct. at 1333.

Accordingly, this anti-retaliation provision must be interpreted liberally to "give effect to the statute's remedial purpose." In re Majewski, 310 F.3d 653, 655 (9th Cir. 2002).  Threats of retaliation, like those made by Defendants, are as much a basis for injunctive relief as past retaliatory acts.  See United States v. Oregon State Med. Soc., 343 U.S. 326, 333 (1952) ("All it takes to make the cause of action for relief by injunction is a real threat of future violation or a contemporary violation of a nature likely to occur").

In order for a plaintiff to establish a prima facie case of retaliation under the FLSA, he must show that: "(1) he engaged in activity protected by the FLSA; (2) defendant took an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1394 (10th Cir. 1997) (analyzing an FLSA retaliation claim by adopting the Title VII burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)); see also Stewart v. Masters

Builders Ass'n of King & Snohomish Counties, 736 F. Supp. 2d 1291, 1295 (W.D. Wash. 2010) (citing Conner and using same burden-shifting analysis for FLSA retaliation claim); Cardenas v. UPS, Inc., 2010 WL 511343 (C.D. Cal. 2009) (applying same three elements).  Here, the Secretary meets all three required elements to make a *prima facie* showing of retaliation and will further demonstrate that these unlawful acts of intimidation and threats will continue without relief from this Court.

### i. Protected Activity

As to the first element to establish retaliation – engaging in a protected activity – the Supreme Court has instructed that the term "complaint" should be broadly construed to effectuate the important remedial purposes and weighty public interest underlying the Act.  Kasten, 131 S. Ct. at 1334.  The "enforcement needs" of the FLSA "argue for an interpretation of the word 'complaint' that would provide 'broad rather than narrow protection to the employee.'"  Id. at 1333 (citations omitted).  As observed by the First Circuit in Valerio v. Putnam Associates, Inc., 173 F.3d 35 (1st Cir. 1999), when analyzing what is a "complaint" under the FLSA's anti-retaliation provision:

> By failing to specify that the filing of any complaint need be with a
> court or an agency, and by using the word "any," Congress left open
> the possibility that it intended "complaint" to relate to less formal

expressions of protest, censure, resentment, or injustice conveyed to

an employer.

Id. at 41.  Moreover, an employee does not actually have to have filed a complaint

to be protected.  If an employer retaliates because the employer "erroneously

believed" the employee engaged in protected conduct, such retaliation would still

violate the Act.  Singh v. Jutla & C.D. & R's Oil, Inc., 214 F. Supp. 2d 1056, 1059

(N.D. Cal. 2002).

Here, Defendant Ameri threatened retaliation against any employee found to

have complained to the Secretary or cooperated with the Secretary's investigation

by providing information about violative working conditions.  Ferniza Decl. ¶ 10.

Such complaints are clearly protected by the FLSA's anti-retaliation provision.  29

U.S.C. § 215(a)(3); see also Ackerly, 180 F.3d at 1004 ("complaints filed 'under'

the FLSA are…those complaints filed with the Department of Labor or the federal

court as specified in the [FLSA]."); Robert DeMario Jewelry, 361 U.S. at 292

("Plainly, effective enforcement could thus only be expected if employees felt free

to approach officials with their grievances.").

### ii. Adverse Action

The Ninth Circuit has defined an adverse employment action broadly to

mean any employment decision "reasonably likely to deter employees from

engaging in protected activity."  Ray v. Henderson, 217 F. 3d 1234, 1243 (9th Cir.

2000) (the Ninth Circuit takes "an expansive view of the type of actions that can be considered adverse employment actions"); see also Hagan v. EchoStar Satellite, L.L.C., 529 F. 3d 617, 624 (5th Cir. 2008) (adopting Title VII framework for FLSA retaliation claims); *Wolf v. Coca-Cola Co.*, 200 F. 3d 1337, 1342-43 (11th Cir. 2000) (same); *Conner*, 121 F.3d at 1394 (same); Stewart, 736 F. Supp. 2d at 1295 (same). The Supreme Court recently made clear in the context of Title VII "that the anti-retaliation provision…is not limited to [adverse employment actions] that affect the terms and conditions of employment." Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 64 (2006).

Here, Defendant Ameri has threatened workers with a number of consequences for speaking with the Secretary – harassment, termination, deportation, and physical violence – all of which clearly constitute adverse actions within the meaning of the FLSA's anti-retaliation provision. Ferniza Decl. ¶¶ 9-10. Moreover, in addition to the adverse actions threatened, the mere threats to carry out these actions can and does constitute an adverse action in that they are "reasonably likely to deter employees from engaging in protected activity." Ray, 217 F.3d at 1243; see also Solis v. SCA Restaurant Corp., 938 F. Supp. 2d 380, 399 (E.D.N.Y. 2013) (threat of termination is adverse action under FLSA anti-retaliation provision); Harris v. Oak Grove Cinemas, Inc., 2013 WL 3456563 (D. Or. May 2, 2013) (granting TRO to enjoin threats of termination and bodily harm

against employees that cooperated with Secretary's FLSA investigation);

Furthermore, Defendant Ameri's ongoing and persistent questioning of employees

regarding their cooperation with the Secretary's investigation, which has made

employees feel threatened and intimidated, is also an adverse action. Ferniza Decl.

¶ 9.

### iii. Causation

For the final element – a causal link between the protected activity and the

adverse action – a party claiming retaliation under the FLSA must "proffer

evidence from which a reasonable factfinder could infer that the employer

retaliated against him for engaging in the protected activity." Blackie v. State of

Me., 75 F.3d 716, 723 (1st Cir. 1996). The "'causal connection may be

demonstrated by evidence of circumstances that justify an inference of retaliatory

motive, such as protected conduct closely followed by adverse action.'" Schnuck

Markets, Inc., 121 F.3d at 1395 (citations omitted).

Here, there can be little doubt that Defendant Ameri's threats of retaliation

and other intimidation of employees are in response to Defendant Ameri's belief

that his employees engaged in the protected activities of filing complaints with the

Secretary and providing information in the Secretary's ongoing investigation.

Indeed, Defendant Ameri indicated to workers that he would carry out the threats

specifically against anyone found to have cooperated with the Secretary. Ferniza

Decl. ¶ 10. This is precisely the type of intimidation that the FLSA's anti-retaliation provision was designed to prevent. Kasten, 131 S. Ct. at 1333 (the "anti-retaliation provision makes [the FLSA's] enforcement scheme effective by preventing 'fear of economic retaliation' from inducing workers 'quietly to accept substandard conditions.'") (citation omitted).

> b. The Secretary Will Show Defendants Have Violated Section 11 and Obstructed the Secretary's Exercise of His Investigative Powers

The Secretary is likely to prevail in showing that Defendant Ameri has violated Section 11(a) of the FLSA by prohibiting his employees from communicating to the Secretary. Section 11 of the FLSA empowers the Secretary to:

> investigate…the wages, hours,…and practices of employment[,]…enter and inspect such places[,]…question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of [the FLSA]….the Secretary shall bring all actions under section 17 to restrain violations of this chapter.

29 U.S.C. § 211(a). The FLSA grants the Secretary these investigatory powers because the statute "relies for enforcement…, not upon 'continuing detailed federal supervision or inspection of payrolls,' but upon 'information and complaints received from employees seeking to vindicate rights claimed to have been

denied.'" <u>Kasten</u>, 131 S. Ct. at 1333.  Here, Defendants have plainly violated the

FLSA's investigatory provision by directing their employees to provide the

Secretary's investigators with false information regarding their pay, hours, and

length of employment.  Ferniza Decl. ¶ 7.  Such instructions have especially

hampered the Secretary's ability to determine the extent of any FLSA violations,

because the Defendants failed to keep any records of hours worked and have no

payroll records whatsoever for the period prior to March of this year.  Bui Decl. ¶

6.  Therefore, speaking with employees is the only way the Secretary can

determine how much the employees actually worked and how much they were

paid.  <u>See</u> <u>Kasten</u>, 131 S. Ct. at 1333 (enforcement of the FLSA depends upon

workers to provide information).

Defendants' instructions to provide false information combined with

Defendants' concurrent threats against employees who cooperate or are perceived

to cooperate with the Secretary's investigation has caused these workers to

rightfully fear continued retaliation if they speak truthfully to the Secretary.  <u>See</u>

Ferniza Decl. ¶¶ 7-11.  Workers have told Wage and Hour that they believe they

would be fired or deported if Defendant Ameri found out that they had spoken with

the Secretary.  <u>Id</u>. at ¶ 11.  It is critical that the Court put a stop to the Defendants'

interference because, as stated by the Supreme Court in <u>Kasten</u>, the Secretary

needs to be able to interview workers to enforce the FLSA.  <u>Kasten</u>, 131 S. Ct. at

1333.  Section 11(a) directs the Secretary to seek injunctive relief to stop any

employer who impedes the Secretary's investigation, and the Secretary is likely to

succeed in such an action due to the Defendants' brazen obstruction.  29 U.S.C. §§

211(a), 217.

> **2.  Absent Immediate Injunctive Relief, the Secretary, the Public, and Defendants' Employees Will Continue to Suffer Irreparable Harm**

It is well-established that an employer's retaliatory acts can cause irreparable

harm by deterring potential complainants or witnesses from coming forward to

challenge the employer's illegal conduct.  See Holt v. Cont'l Grp., Inc., 708 F.2d

87, 91 (2nd Cir. 1983) ("A retaliatory discharge carries with it the distinct risk that

other employees may be deterred from protecting their own rights . . . or from

providing testimony for the plaintiff in her effort to protect her own rights.  These

risks may be found to constitute irreparable injury"); see also Arcamuzi v.

Continental Air Lines, Inc., 819 F.2d 935, 938–39 (9th Cir. 1987) ("[A]llegations

of retaliation for the exercise of statutorily protected rights represent possible

irreparable harm far beyond economic loss"); Carrillo v. Schneider Logistics, Inc.,

2012 WL 556309 (C.D. Cal. 2012) ("courts routinely recognize that retaliatory

discharges deter workers from vindicating their statutory rights and seeking access

to courts, and that these injuries constitute irreparable harm").  The "resulting

weakened enforcement of federal law can itself be irreparable harm in the context

of a preliminary injunction application." Mullins, 626 F.3d at 55; see also Centeno-Burney, 302 F. Supp. 2d at 135.  The deterrent effect on workers prevents the Secretary from exercising his authority to investigate by limiting the Secretary's ability to interview workers and learn of potential FLSA violations.

Here, numerous parties will be irreparably harmed if Defendant Ameri is not enjoined from further obstruction and retaliation: 1) the Secretary; 2) the employees currently subjected to these unlawful conditions; 3) and the public at large – particularly Defendants' law-abiding competitors whose businesses are undercut by Defendants' unfair and unlawful business practices.  The employees themselves are irreparably harmed by being discouraged from coming forward to vindicate their potential rights under the FLSA by the looming threats of harassment, termination, immigration consequences, and physical violence if Defendant Ameri learns that they spoke to the Secretary.  See Ferniza Decl. ¶ 12. The employees' "fear of economic retaliation" is inducing them "to quietly accept substandard conditions." Kasten, 131 S. Ct. at 1333 (quoting Robert DeMario Jewelry, 361 U.S. at 292).

The Secretary relies on the testimony of workers when conducting investigations into employers' wage and hour violations, especially here where Defendants failed to keep records and employee testimony is the only means available to the Secretary to determine the actual working conditions. Kasten, 131

S. Ct. at 1333. Without assurances from the Court that witnesses who cooperate with the government are protected from retaliation, the Secretary cannot effectively enforce the law in this case, violating the investigative provision of the FLSA and hampering other current and future investigations by the Secretary in this community. The "resulting weakened enforcement of the FLSA" directly interferes with and irreparably harms the Secretary's enforcement powers. Mullins, 626 F.3d at 55. If this Court does not enter the relief sought, Defendant Ameri will continue to threaten and intimidate potential witnesses, preventing the Secretary from exercising his authority under Section 11 to determine the full scope of Defendants' violations of FLSA, and harming the Secretary's future investigations.

### 3. The Balance of Equities Tilts Sharply in the Secretary's Favor and an Injunction is in the Public Interest

The balance of equities tilts sharply in the Secretary's favor, and entering the preliminary injunction is in the public interest. See Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 657-58 (9th Cir. 2009) (court may consider last two Winter factors together). Defendants Alkanan, Inc. and Karim Ameri have no legitimate interest in preventing the Secretary from exercising the investigative authority granted by Section 11 of the FLSA. Further, Defendants have no legitimate interest in inflicting harassment, termination, immigration

consequences, or physical bodily harm upon their employees or in retaliation

against their employees for the employees' protected communications with the

Secretary.  The Secretary, on the other hand, seeks only to have Defendants be

ordered to comply with the law and that the employees be reminded of their

protected rights under the Act.  Restraining Defendant Ameri's contact with his

employees pending the completion of the Secretary's investigation will ensure that

he complies with the FLSA's investigative and anti-retaliation provisions and

ensure that his employees feel free to report violations and otherwise communicate

with the Department of Labor.

## III.   CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court enter a temporary restraining order giving full and fair notice to employees that this Court will not permit any interference or retaliation, and that all of the employees of Alkanan, Inc. are free to speak to the Secretary without fear of reprisal.  Specifically, the Secretary requests that the Court issue a Temporary Restraining Order enjoining Defendant Ameri, his agents and employees, and all those in active concert and participation with him as follows:

(1) Enjoining Defendants from terminating or threatening to terminate, reporting or threatening to report to immigration authorities, inflicting or threatening to inflict bodily harm on, or retaliating or discriminating against their employees in any other way, based on their belief that such employee spoke with a Department of Labor official;

(2) Enjoining Defendants from telling anyone who works for them not to speak to representatives of the Secretary or to provide false information to the Secretary or otherwise coercing employees to make false statements regarding the terms and conditions of their employment;

(3) Enjoining Defendants from obstructing the Secretary's investigation in any way;

(4) Requiring Defendant Karim Ameri to read aloud, or permitting a representative of the Secretary to read aloud, the following statement to all employees employed at Alkanan's Recycling Innovation and Valley Recycling facilities informing them of their right to speak with representatives of the Secretary free from retaliation or threats of retaliation or intimidation by Defendants, the statement to be read during employees' paid working hours:

> *You are protected by the Fair Labor Standards Act and have the right to participate freely in the U.S. Department of Labor's investigation into your employer's pay practices. You have the right to speak freely with investigators or other officials from the Department of Labor. Your employer is prohibited from retaliating against you in any way, including by terminating you, reporting you to immigration, inflicting physical harm on you, or threatening to do any of these things because you spoke with the Department of Labor.*

> *The U.S. District Court for the Central District of California has ordered Mr. Ameri, and anyone acting on Mr. Ameri's behalf, to cease coercing, retaliating against, threatening to retaliate against, intimidating, or attempting to influence or in any way threatening employees for providing information to the Department of Labor. The Court has barred Mr. Ameri from contacting or communicating with any employees of Alkanan regarding any complaints that employees have made or will make to the Department of Labor.*

> *Usted está protegido por la Ley de Normas Justas de Trabajo y tiene el derecho de participar libremente en la investigación del Departamento de Trabajo. Usted tiene el derecho de hablar libremente con investigadores o otras personas del Departamento de Trabajo. Su empleador está prohibido de hacer represalias contra de usted de cualquier manera incluyendo la terminación de usted, reportando usted a inmigración, infligir daño físico a usted, o amenazar con hacer cualquiera de estas cosas porque usted hablo con el Departamento de Trabajo.*

*El Tribunal Federal de Distrito Central de California ha ordenado que el señor Ameri, y cualquier persona que actúe en el nombre de él, cesen coerción o vindicación o amenazas o intimidación o intentar influir o amenazar de cualquier manera los empleados por dar información al Departamento de Trabajo. El Tribunal ha prohibido que el señor Ameri contacte o comunique con empleados de Alkanan acerca de cualquier comunicación entre ellos y el Departamento de Trabajo.*

(5) Requiring Defendants to post at each worksite of Defendant Alkanan a hard copy of the statement included in ¶ 4 above, in both English and Spanish, and providing each employee with a copy of the written statement, in English and in Spanish, along with the written paystub provided to each employee with his or her next paycheck; and

(6) Prohibiting Defendant Karim Ameri from speaking directly to employees of Defendant Alkanan's recycling facilities, either directly or through another person acting on his behalf, regarding any communication any employee has or will have with the Department of Labor about the pending investigation by the Wage and Hour Division.

Plaintiff further requests that a hearing on his request for preliminary injunction be held as soon as is practicable, and Plaintiff requests the following additional relief:

(1) Providing for costs and expenses to reimburse Plaintiff in maintaining this application; and

(2) Providing for all such other relief as may be appropriate, just, and proper.

1

2     DATED: December 16, 2013          Respectfully submitted,

3

4                                       M. PATRICIA SMITH
                                        Solicitor of Labor
5

6                                       JANET M. HEROLD
                                        Regional Solicitor
7

8                                       DANIEL J. CHASEK
                                        Associate Regional Solicitor
9

10

11                                      _Nancy Steffan_

12                                      NANCY E. STEFFAN
                                        Trial Attorney
13                                      Attorneys for Plaintiff
14                                      United States Department of Labor

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

1  Janet M. Herold
   Regional Solicitor
2  Daniel J. Chasek
   Associate Regional Solicitor
3  **NANCY E. STEFFAN** (CSBN 280958)
   Trial Attorney
4  Office of the Solicitor
   U.S. Department of Labor
5  350 S. Figueroa St., Suite 370
   Los Angeles, California 90071
6  Direct: (213) 894-5366
   Facsimile: (213) 894-2064
7  Email: Steffan.Nancy.E@dol.gov

8

9               **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11

12 **THOMAS E. PEREZ**, Secretary of        )  Civil Action
   Labor, United States Department of       )
13 Labor,                                    )  File No. _____
                                            )
14            Plaintiff,                     )  **DECLARATION OF WAGE AND**
                                            )  **HOUR DISTRICT DIRECTOR**
15        v.                                 )  **KIMCHI BUI IN SUPPORT OF**
                                            )  **PLAINTIFF'S MOTION FOR**
16 **ALKANAN, INC. d/b/a Recycling**         )  **TEMPORARY RESTRAINING**
   **Innovation d/b/a Valley Recycling**, a )  **ORDER**
17 corporation; **KARIM AMERI**, an          )
   individual;                               )
18                                          )
            Defendants.                      )
19                                          )
                                            )
20 _____    )

21

22
23      I, KIMCHI BUI, hereby declare and state as follows:

24      1.      I am the District Director for the Los Angeles District Office of the Wage

25 Hour Division of the United States Department of Labor ("Wage and Hour" or the

26 "District Office"). I have personal knowledge of the facts stated herein, and, if

27
28 necessary, I could and would testify to the facts stated below. Further, I have reviewed

*Bui Declaration*                                    *Page 1 of 4*

the Wage and Hour official file regarding this matter and am familiar with the documents contained therein, which were made in the ordinary course of government business by myself or other Wage and Hour staff members.

2.     My office has authorized the investigation of Alkanan, Inc. d/b/a Recycling Innovation, d/b/a Valley Recycling ("Alkanan") which was commenced on or about October 28, 2013, pursuant to the Fair Labor Standards Act of 1938, as amended (the "Act" or the "FLSA"), 29 U.S.C. §§ 201, et seq. to determine whether Alkanan had violated terms of the FLSA and, specifically, its minimum wage and overtime provisions, 29 U.S.C. §§ 206-207 (the "Investigation").

3.     Alkanan is a California corporation in the recycling business with its principal place of business at 29110 Quail Run Drive, Agoura Hills, CA 91303.

4.     Alkanan operates approximately six recycling facilities ("recycling facilities" or "facilities") in the San Fernando Valley area under the names Recycling Innovation and Valley Recycling.   At these facilities, Alkanan purchases recyclable materials from the public and resells them to recycling factories.

5.     Karim Ameri is the co-owner of Alkanan and manages the day-to-day operations of the facilities.  Mr. Ameri hires, fires, and supervises employees; sets employees' schedules; and sets and pays employees' wages.

6.     When Wage and Hour began this investigation, Mr. Ameri informed Wage and Hour that Alkanan does not keep records of the hours that its employees work.

1  Rather, according to Mr. Ameri, employees are paid a flat rate of $65-70 per day for

2  shifts that last up to ten hours, up to six days per week. Furthermore, Alkanan did not

3

4  keep payroll records of any kind prior to March of 2013.

5        7.      On December 4, 2013, Mr. Ameri and his CPA visited the District Office

6

7  and requested a meeting regarding the Investigation. Mr. Ameri's CPA told me that Mr.

8  Ameri was upset by the way his employees had been acting since the Investigation

9

10 began. Mr. Ameri was upset that his employees were claiming that he owes them

11 money. He was also upset that at least one employee had complained about Alkanan's

12

13 pay practices on Facebook. Mr. Ameri's CPA asked me what he could do if employees

14 complain about his pay practices on Facebook. I told him that he could not retaliate or

15 otherwise interfere with our investigation.

16

17        8.      Mr. Ameri's CPA also told me that he believed that some of Mr. Ameri's

18 comments to employees had been misinterpreted or misunderstood due to a language

19

20 barrier. Mr. Ameri's CPA stated that in their native language, a threat to "break his

21 arm" does not constitute a serious threat of physical violence. Mr. Ameri's CPA stated

22 that Mr. Ameri did not actually intend to threaten physical violence when he threatened

23

24 to break an employee's arm.

25

26

27

28

*Bui Declaration*                                              *Page 3 of 4*

1     I declare, under the penalty of perjury, of the laws of the United States, that the

2

3     foregoing is true and correct and that this declaration was executed in Los Angeles,

4     California on December 16th, 2013.

5

6

7     KIMCHI BUI,

8     DISTRICT DIRECTOR

9     Wage and Hour Division, Los Angeles District Office
      United States Department of Labor

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT  B**

1 | Janet M. Herold
Regional Solicitor
2 | Daniel J. Chasek
Associate Regional Solicitor
3 | **NANCY E. STEFFAN** (CSBN 280958)
Trial Attorney
4 | Office of the Solicitor
U.S. Department of Labor
5 | 350 S. Figueroa St., Suite 370
Los Angeles, California 90071
6 | Direct: (213) 894-5366
Facsimile: (213) 894-2064
7 | Email: Steffan.Nancy.E@dol.gov

8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11 | **THOMAS E. PEREZ**, Secretary of | Civil Action
12 | Labor, United States Department of Labor, |
13 | File No. _____
| Plaintiff, |
14 | v. | **DECLRATION OF WAGE AND
HOUR TECHNICIAN CAROLINA
15 | **ALKANAN, INC. d/b/a Recycling** | FERNIZA IN SUPPORT OF
**Innovation**, a corporation; **KARIM** | PLAINTIFF'S MOTION FOR
16 | **AMERI**, an individual; | TEMPORARY RESTRAINING
ORDER**
17 | Defendants. |
18
19
20

21 | Now comes CAROLINA FERNIZA, and states as follows:

22 |     1.    I have been, at all relevant times herein, employed by the Secretary of

23 | Labor ("Secretary") in the Wage and Hour Division of the United States

24 | Department of Labor ("Wage and Hour") as a Technician in the Los Angeles,

25 | California District office.

27 |     2.    As set forth below, I have personal knowledge of the matters stated

28 | herein and, if necessary, I could and would testify to the facts stated below.

*Ferniza Declaration*                                                      *Page 1 of 4*

3.      I am fluent in English and Spanish.

4.      It is and has been part of my official duties to assist with investigations of violations of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.).  Since October of this year, I have been assigned to conduct interviews with Spanish-speaking employees of Alkanan, Inc. d/b/a Recycling Innovation d/b/a Valley Recycling ("Alkanan") as part of Wage and Hour's investigation into Alkanan's pay practices.

5.      I began conducting interviews of Alkanan employees on or about October 28, 2013.  The employees I have interviewed work in the recycling facilities operated by Alkanan.  The employees' duties including purchasing recyclable goods from members of the public who bring their recyclables to the facilities.

6.      The employees I have spoken with are native Spanish speakers.  The employees have told me that Mr. Ameri speaks to them in English or Spanish, although Spanish is not Mr. Ameri's native language.

7.      Beginning in early November, employees told me that Defendant Karim Ameri instructed them to provide false information to the Department of Labor.  Employees informed me that Mr. Ameri told them that if they are contacted by the Department of Labor they should state that they work only part time, that they are paid the minimum wage, that they are paid by the hour, that they are paid by check, and that they have been working for Mr. Ameri for only three months.  Employees told me that Mr. Ameri instructed them to make these statements even though they are not true.  To the contrary, employees have told me that they have worked shifts of 60 hours per week or more, that they are paid a flat daily rate regardless of the number of hours worked, and that they have been paid

*Ferniza Declaration*                                                      *Page 2 of 4*

in cash. All of the employees I have spoken with have worked for Alkanan for more than three months; many have worked for Alkanan for several years or more.

8.      Employees have also told me that Mr. Ameri required them to write letters stating that Mr. Ameri is a good boss, that they are paid properly, and that they have only been working for Alkanan for three months, even though this is not true. Employees were not given copies of these letters.

9.      In early December, I learned from employees that that Mr. Ameri frequently asks them, in one-on-one conversations, whether they have spoken to the Department of Labor and whether they know which of their coworkers has spoken to the Department of Labor. Employees have reported to me that Mr. Ameri continues to ask these questions, repeatedly, even after they tell him that they have not spoken to the Department of Labor and that they do not know who has. Employees have told me that they feel harassed and threatened by this repeated questioning because they are fearful that Mr. Ameri will find out that they have spoken to me.

10.      Employees are afraid to tell Mr. Ameri that they have spoken to me because he has threatened to retaliate against any employee who complains to the Department of Labor. On various occasions, Mr. Ameri has told employees that if he finds out who has complained to the Department of Labor that he will fire that person, that the person will be reported to immigration, that he will "make [that person's] life bad", and that he will "break [that person's] teeth." Employees have told me about these conversations. One employee also played me several recordings, which the employee told me were made during conversations with Mr. Ameri. In the recordings, I heard an individual that the employee identified as Mr. Ameri saying that he planned to get rid of people who had complained to the

*Ferniza Declaration*                                                    *Page 3 of 4*

Department of Labor and that these people would be reported to immigration. I also listened to recordings in which Mr. Ameri said that when he found out who had complained to the Department of Labor that he would "make his life bad" and "break his teeth."

11.    As a result of these threats, the employees I have spoken to are very worried that Mr. Ameri will find out that they have spoken to me. The employees I have interviewed repeatedly ask whether their names will be revealed to their employer if they speak with me. Employees are worried that they will be fired or deported if Mr. Ameri learns that they have spoken with Wage and Hour. One of the employees I spoke with told me that he believes Mr. Ameri would want to kill him if he found out he spoke with the Department of Labor. These employees are unwilling to be identified at this time for fear of Mr. Ameri's retaliation against them.

12.    Mr. Ameri's attempts to coerce his employees not to speak truthfully to me have limited my ability to investigate Alkanan's pay practices. To date, several employees have refused to speak with me regarding their working conditions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 12/16/2013

CAROLINA FERNIZA